# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

**IN RE:**

**WANDRA ADAMS RAYNOR**                    **CHAPTER 11**
**SSN:  xxx-xx-3119**                             **CASE NO.:  16-04928-5-SWH**
**725 N. Raleigh Street**
**Angier, NC  27501**

             **Debtor**


**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***


## PLAN OF REORGANIZATION


RICHARD D. SPARKMAN
Attorney for Debtor
N. C. State Bar No. 6857
RICHARD D. SPARKMAN & ASSOCIATES, P.A.
Post Office Box 1687
Angier, North Carolina 27501
(919) 639-6181
rds@sparkmanlaw.com

## TABLE OF CONTENTS

<u>Page</u>

Summary of Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Classification and Treatment of Classes of Creditors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Means of Execution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Modification of Claims and Cancellation Upon Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Provisions Governing Distributions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Assumption of Unexpired Leases and Executory Contracts . . . . . . . . . . . . . . . . . . . . . . . . 14

Causes of Actions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Confirmation as Waiver and Release of Debtor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Default of Debtor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Acceptance or Rejection of Plan; Effect of Rejection By An Impaired Class . . . . . . . . . . . . . 15

Cramdown For Impaired Creditors Not Accepting the Plan . . . . . . . . . . . . . . . . . . . . . . . . . 16

Retention of Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Miscellaneous Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

**IN RE:**

| | |
|---|---|
| **WANDRA ADAMS RAYNOR** | **CHAPTER 11** |
| **SSN:  xxx-xx-3119** | **CASE NO.:  16-04928-5-SWH** |
| **725 N. Raleigh Street** | |
| **Angier, NC  27501** | |

           **Debtor**

## PLAN OF REORGANIZATION

Pursuant to the provisions of §§1123 and 1127 of the Bankruptcy Code (11 U.S.C. §§ 1123 and 1127), the Debtor, Wandra Adams Raynor ("Debtor"), hereby submits the following Plan of Reorganization.

## I.  SUMMARY OF PLAN

The Debtor's Plan of Reorganization ("Plan") proposes that all creditors receive distributions in cash on account of their allowed claims.  The means of execution for the Debtor's Plan will involve payments from Debtor's disposable income and partial liquidation of the Debtor's assets.

The Debtor will pay the administrative costs in full on the Effective Date or upon such other mutually acceptable terms as the parties may agree.

Any and all priority taxes due and owing to the Internal Revenue Service, if any, shall be paid over a period of five (5) years and shall include statutory interest at the rate set by Internal Revenue Code §s 6601 and 6621 determined in accordance with 11 U.S.C. § 511.

Any and all priority taxes due and owing to the North Carolina Department of Revenue, if any, shall be paid over a period of five (5) years and shall include statutory interest at the rate set by N.C.G.S. § 105-241.1 determined in accordance with 11 U.S.C. § 511.

Any and all priority taxes due and owing to the Harnett and Carteret County Tax Collectors, if any, shall be paid over a period of five (5) years and shall include statutory interest determined in accordance with 11 U.S.C. § 511.

The Debtor's beach house located at 2110 Ocean Dr., Emerald Isle, N. C., has been valued at $337,500.00 based upon recent listing price recommendation dated September 1, 2016.  The tax value is $400,666.00 and is subject to a first deed of trust in favor of Specialized Loan Servicing,

LLC ("SLS").  The Debtor plans to value this property and pay SLS as secured to the extent of its value of $337,500.00 with the balance to be paid as a general unsecured claim.  Payoff on this property is $589,901.88 and arrearages of $55,005.96 as of September 19, 2016.  At the time of the filing of the bankruptcy there was a foreclosure sale pending for September 21, 2016, File No. 16 SP 203, Carteret County, N. C.

The Debtor also owns a beach house at 102 Galleon Court, Emerald Isle, N. C. valued per Debtor at $1,000,000.00.  Tax value is $807,610.00.  This property is subject to a first deed of trust in favor of  Yadkin Bank, d/b/a Newbridge Bank in the amount of $593,069.22 as of September 21, 2016.  The Debtor will sell this property, pay off the fully secured claim of Newbridge Bank and devote the net proceeds toward Plan payment of  administrative, priority and unsecured claims in the order of their state court priority.

The Debtor owns a commercial retail property at 725 N. Raleigh St., Angier, N. C.  The tax value and Debtor's opinion of value, is $457,470.00.  It is subject to a first deed of trust in favor of First Bank in the amount of $370,000.00.  This property currently houses the family business, APW, Inc. (formerly Angier Paint & Wallpaper, Inc.) owned 100% by the son, Adam Raynor.  APW pays the Debtor rent at the rate of $5,000.00 per month.  APW also pays the First Bank mortgage, taxes and insurance on this property.

The Debtor owns a 2014 Kia Sorento automobile which is subject to a $25,127.34 under-secured claim as filed by Santander Consumer USA, Inc., dba Chrysler Capital.  The car was valued per Santander at $18,475.00. The contractual interest is 16.81%.  Debtor proposes to value the car in the Plan at $18,475.00 and to pay Santander over a new five year term bearing interest at 5.5% with the balance to be treated as a general unsecured claim.  (Debtor's petition indicated that the vehicle was a 2012 Kia Sorento valued at $15,750.00 when, in fact, it is a 2014 Kia Sorento.)

The Internal Revenue Service filed claim no. 3-1 based upon unassessed tax returns for 2014 and 2015.  Those returns have since been filed indicating no tax liability.  The only other priority claims are current property taxes for Carteret County in the amount of $3,775.65 and Harnett County in the amount of  $6,245.85.

The total of known, undisputed, general unsecured claims is approximately $72,389.17 plus anticipated deficiency claims in favor of Santander Consumer USA, Inc. and Specialized Loan Servicing, LLC.  In accordance with the Liquidation Test attached to Debtors' Disclosure Statement as ***Exhibit A***, the unsecured creditors would receive a One Hundred percent (100%) dividend in a Chapter 7 liquidation from equity in a pool of assets worth $1,935,599.46.  Accordingly, the Debtor is proposing to pay allowed unsecured claims as per Class IX treatment herein One Hundred percent (100%) over five years bearing 1.5% interest (federal interest rate) commencing 90 days from the Effective Date, with a thirty (30) day grace period.

The Debtor's liabilities will be paid according to the priorities of the Bankruptcy Code and further Orders of the Bankruptcy Court.  The specific amounts and terms of payment will be made

according to the further terms of this Plan and Confirmation Orders of the Court.

## II.  DEFINITIONS

1.    "BANKRUPTCY CODE" shall mean the United States Bankruptcy Code, Title 11 of the United States Code, as enacted in 1978 and thereafter amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA).  References to "§___ " herein shall refer to a § of the Bankruptcy Code, 11 U.S.C. § 101, et seq.

2.    "BANKRUPTCY RULES" shall mean the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to Chapter 11 cases.

3.    "CLAIM" shall mean a duly listed or a timely filed claim which is allowed in order to be paid by the Court.

4.    "CLASS" shall mean any one of the Classes of Claims or Interests designated in Article III of the Plan.

5.    "CONFIRMATION DATE" shall mean the date of entry by the Court of an order confirming the Plan at or after a hearing pursuant to 11 U.S.C. § 1129.

6.    "CONFIRMATION HEARING" shall mean the hearing conducted by the Court regarding confirmation of the Plan pursuant to 11 U.S.C. § 1129.

7.    "CONFIRMATION ORDER" shall mean the order of the Court confirming the Plan.

8.    "COURT" shall mean the United States Bankruptcy Court for the Eastern District of North Carolina, including the United States Bankruptcy Judge presiding in the Chapter 11 case of the Debtors.

9.    "CREDITORS" shall mean all creditors of the Debtors holding claims for unsecured debts, liabilities, demands or claims of any character whatsoever.

10.    "DEBTOR" shall mean Wandra Adams Raynor.

11.    "DISBURSING AGENT" shall mean Adam Raynor, Attorney in Fact for Wandra Adams Raynor.

12.    "DISCLOSURE STATEMENT" shall mean the Disclosure Statement describing this Plan prepared in accordance with § 1125 and approved by order of the Bankruptcy Court, to be distributed to the holders of claims whose votes with respect to this Plan are to be solicited.

13.    "DISPUTED CLAIM" shall mean any claim (a) that is scheduled by the Debtors as

5

disputed, contingent or unliquidated, or (b) that is scheduled by the Debtors, or proof of which has been filed with the Bankruptcy Court and with respect to which a timely objection to allowance, in whole or part, has been filed and which objections have not been (i) withdrawn or settled, or (ii) determined by a Final Order.

14.     "EFFECTIVE DATE" shall be fourteen (14) days after entry of the Order Confirming Plan.

15.     "FINAL DECREE" shall mean the order of this Court pursuant to Bankruptcy Rule 3022 closing this case.

16.     "IMPAIRED" classes of creditors are those whose claims or interests are altered by the Plan, or who will not receive under the Plan the allowed amount of their claims in cash as of the Order for Relief (as defined in the Plan).

17.     "PETITION DATE" shall mean the date upon which the Debtors filed the voluntary Chapter 11 petition, to wit, September 21, 2016.

18.     "PLAN" shall mean this Plan of Reorganization in its present form or as it may be amended or modified.

19.     "PRIORITY CLAIM" shall mean any claim to the extent entitled to priority in payment under § 507.

20.     "PRO-RATA" shall mean the amount of cash or property to be paid or distributed to a claimant with respect to an Allowed Claim on a particular date, in accordance with the ratio, as of such date, of the dollar amount of the Allowed Claim of such person in the indicated class to the aggregate dollar amount of Claims in the indicated class (including, in each such calculation, the full amount of Disputed Claims in the class which have been asserted or are otherwise pending and which have not yet been allowed or otherwise disposed of).

21.     "SECURED CREDITORS" shall mean all creditors who hold a lien, security interest or any other encumbrances which have been properly perfected as required by law with respect to property owned by the Debtors, to the extent of the value of the collateral.

22.     "SUBSTANTIAL CONSUMMATION" shall mean the time the Reorganized Debtor has commenced the distribution of initial Plan payments to all creditor classes.

23.     "TAX CLAIM" shall mean any claim entitled to priority in treatment pursuant to § 507(a)(8).

24.     "GENERAL UNSECURED CLAIM" shall mean any claim, whether or not liquidated or contingent, other than a tax claim, administrative claim, or secured claim.

6

## III.  CLASSIFICATION AND TREATMENT OF
## CLASSES OF CREDITORS

**A.    Class I - Administrative Costs**

(1)    <u>Classification</u>.  Class I consists of claims for any cost or expense of administration pursuant to §s 503, 506, and 507 of the Bankruptcy Code.

(2)    <u>Impairment</u>.  This class will be unimpaired.

(3)    <u>Treatment</u>.  Administrative costs and expenses approved by the Court shall be paid in cash and in full on the Effective Date of the Plan.

In the event that funds are not available to pay such costs and expenses on the Effective Date, then each holder of such a claim will receive monthly payments from the Debtors cash flow until paid in full.  Such claims remaining unpaid 30 days following the Effective Date shall accrue interest at a rate of 6% per annum.

**B.    Class II - Ad Valorem Taxes**

(1)    <u>Classification</u>.  Class II consists of claims for taxes owed by the Debtors to any city, county, or other municipality or taxing entity entitled to tax the property of the Debtor based upon the value of the property assessed.  The Debtors are aware of the following claims in favor of the Harnett and Carteret County Tax Collectors:

| CREDITOR | YEAR | DOLLAR AMOUNT |
|----------|------|---------------|
| Carteret County | 2016 | $3,775.65 |
| Harnett County | 2016 | $6,245.85 |

(2)    <u>Impairment</u>.  This class will be unimpaired.

(3)    <u>Treatment</u>.  The Debtors shall pay this class in accordance with §§ 507(a)(8) and 1129(a)(9)(C) of the Bankruptcy Code.  If not sooner paid from sale of real property, this class shall receive deferred cash payments over a period ending not later than five years from the date of the Order for Relief of a value equal to the full amount of such priority tax claim, with interest on such claim at the rate set by N.C.G.S. § 105-360(a) determined as of the calendar month in which the Plan is confirmed in accordance with § 511 of the Bankruptcy Code.  Monthly payments shall commence on the 10th day of the first full month following the Effective Date.  Such payments will be paid directly by the Debtors.

Ad valorem taxes for the current tax year may be treated as a pre-petition claim and not as an administrative expense.  *See <u>In Re St. Lawrence Homes, Inc.</u>, Case No. 09-00775-8, Order dated July 28, 2010, citing <u>In Re Members Warehouse, Inc.</u>, 991 F.2d 116, 118-119 (4th Cir. 1993).*

7

C.     **Class III - Internal Revenue Service**

(1)     <u>Classification</u>.  Class III consists of the secured and unsecured priority claims against the Debtors for income taxes and/or any and all other taxes levied or entitled to be levied against the Debtor by the Internal Revenue Service, plus statutory interest as allowed by law.  The Debtors are aware of the following asserted claims:

Claim 3-1 for $38,232.13 for unassessed and unfiled 2014 and 2015 income taxes. Those tax returns have now been filed and no ultimate liability is anticipated.

(2)     <u>Impairment</u>.  This class will be unimpaired.

(3)     <u>Treatment</u>.  The Debtor proposes the following treatment:

**Secured and Unsecured priority tax claims** described in § 507(a)(8) of the Bankruptcy Code shall be paid in monthly installments over a period not exceeding five (5) years from the Order for Relief.  The Class III creditor shall retain its liens and secured status as to the underlying secured tax liability, if any, and shall accrue statutory interest at the rate set by Internal Revenue Code §§ 6601 and 6621, determined as of the calendar month in which the Plan is confirmed in accordance with § 511 of the Bankruptcy Code.

Regular monthly payments shall commence at the conclusion of the first full quarter following the Order for Relief and shall continue until the balance of the secured (if any) and unsecured priority Class III claims are satisfied.  All unpaid principal and accrued interest shall be due and payable in cash on the five (5) year anniversary of the Order for Relief.  Such payments will be paid directly by the Debtor.

In the event the Debtor fails to make a monthly payment in accordance with the terms of this Plan then, subject to a ten (10) day right to cure following written notice of default from the Class III creditor, the Class III creditor shall be permitted to exercise any and all of its collection remedies under non-bankruptcy law without further Orders of the Bankruptcy Court.

During the Plan repayment period as set forth above, the Class III creditor's secured and priority unsecured claims shall maintain their secured and priority status in accordance with 11 U.S.C. § 507(a)(8)(A) and 523(a)(1)(A) and any applicable statute of limitation on collection shall be tolled.

D.     **Class IV - North Carolina Department of Revenue**

(1)     <u>Classification</u>.  Class IV consists of the secured and unsecured priority claims against the Debtors for income taxes and/or any and all other taxes levied or entitled to be levied against the Debtors by the North Carolina Department of Revenue, plus statutory interest as allowed by law. The Debtors are aware of the following asserted claims:

8

N. C. Department of Revenue      Secured:    $-0-
                                                Priority:    $-0-

(2)      <u>Impairment</u>. This class will be unimpaired.

(3)      <u>Treatment</u>. The Debtor proposes the following treatment:

**Secured and unsecured priority tax claims** described in § 507(a)(8) of the Bankruptcy Code shall be paid in monthly installments over a period not exceeding five (5) years from the Order for Relief. The Class IV creditor shall accrue statutory interest at the rate set by N.C.G.S. § 105-241.1, determined as of the calendar month in which the Plan is confirmed in accordance with § 511 of the Bankruptcy Code.

Regular monthly payments shall commence at the conclusion of the first full quarter following the Order for Relief and shall continue until the balance of the secured (if any) and unsecured priority Class IV claims are satisfied. All unpaid principal and accrued interest shall be due and payable in cash on the five (5) year anniversary of the Order for Relief. Such payments will be paid directly by the Debtor.

In the event that the Debtor fails to make a monthly payment in accordance with the terms of this Plan then, subject to a ten (10) day right to cure following written notice of default from the Class IV creditor, the Class IV creditor shall be permitted to exercise any and all of its collection remedies under non-bankruptcy law without further Orders of the Bankruptcy Court.

During the Plan repayment period as set forth above, the Class IV creditor's secured (if any) and priority unsecured claims shall maintain their priority status in accordance with 11 U.S.C. §§ 507(a)(8)(A) and 523(a)(1)(A), and any applicable statute of limitation on collection shall be tolled.

E.      **Class V - THE UNDERSECURED CLAIM OF SANTANDER CONSUMER USA, INC. dba CHRYSLER CAPITAL ("SANTANDER").**

(1)      <u>Classification</u>. Santander, Loan No. xxx3928 is undersecured with a first lien of approximately $25,127.34 as of the Petition Date on a 2014 Kia Sorenta, VIN 5XYKTCA65EG501424, valued per Santander at $18,475.00. The pre-petition payments are in the amount of $716.54 bearing interest at 16.81%.

(2)      <u>Impairment</u>. This class will be impaired.

(3)      <u>Treatment</u>. Santander shall be treated as an under-secured obligation of the Debtor. Santander shall retain its lien to the extent of $18,475.00, the value of its collateral, pursuant to §1129(b)(2)(a)(i)(1) of the Bankruptcy Code until such claim is paid in full according to the terms of its contract as modified by this Plan. This contract shall be treated as a current, non-default loan. The outstanding balance shall be calculated on a non-default basis. The claim shall bear interest at

five point five percent (5.5%) and be modified and re-amortized over a new five year term with payments commencing in the amount of $352.89 on the first day of the month following 30 days from the Effective Date with a 30 day grace period. Debtor shall be responsible for maintaining insurance coverage with Santander named as Loss Payee. Debtor shall make insurance premium payments directly. Property taxes for 2016 and prior years are current.

(4)    In the event the Debtor fails to make timely automobile payments, fails to make timely payment to property tax claims per the Plan; fails to pay post-petition property taxes in a timely manner; or fails to maintain adequate insurance on Santander's collateral with Santander named as loss payee, Santander shall provide Debtor with a written Notice of Default under the terms of the Plan providing ten (10) additional days to cure default, failing which the automatic stay and/or permanent injunction shall be automatically lifted and Santander entitled to proceed with its legal remedies under state law without further Orders of the Bankruptcy Court. The stripped unsecured claim of Santander shall be treated and paid as a Class IX general unsecured claim.

## F.    Class VI - FIRST BANK ("First Bank").

(1)    Classification. First Bank Loan No. 420029047 is fully secured with an equity line secured by a first deed of trust in the approximate amount of $370,000.00 on commercial retail property located at 725 North Raleigh Street, Angier, Harnett County, N. C. 27501. Pre-petition payments in the approximate amount of $2,500.00 per month are current and are being paid by the tenant, APW. (APW, Inc., formerly Angier Paint and Wallpaper, Inc., is owned by Debtor's son, Adam Raynor. The Note payment to First Bank is being paid by APW along with all taxes, insurance and maintenance on the property.)

(2)    Impairment. This class will be unimpaired.

(3)    Treatment. First Bank shall be treated as a fully secured obligation of the Debtor and shall retain its lien pursuant to § 1129(b)(2)(a)(i)(1) of the Bankruptcy Code until such claim is paid in full according to the terms of its contract.

(4)    In the event the Debtor and/or Adam Raynor/APW fail to make timely mortgage payments; fail to make timely payment to property tax claims per the Plan; fail to pay post-petition property taxes in a timely manner, or fail to maintain adequate insurance on First Bank's collateral with First Bank named as loss payee, First Bank shall provide Debtor with a written Notice of Default under the terms of the Plan providing ten (10) additional days to cure default, failing which the automatic stay and/or permanent injunction shall be automatically lifted and First Bank entitled to proceed with its legal remedies under state law without further Orders of the Bankruptcy Court.

## G.    Class VII - SPECIALIZED LOAN SERVICING, LLC ("SLS").

(1)    Classification. SLS, loan no. 6771, is undersecured with a first deed of trust on rental property consisting of beach house and lot at 2110 Ocean Drive, Emerald Isle, Carteret County, N.C.

The Debtor's opinion of value based upon recent broker valuation was $337,500.00. The balance owed is approximately $589,901.88 including arrearages of $55,055.96. The Note bears interest at 5.75% This property was in foreclosure at the time of the filing of the Chapter 11 proceeding, File No. 16 SP 203, Carteret County, N. C.

(2)     Impairment. This class will be impaired.

(3)     Treatment. SLS shall be treated as a secured obligation of the Debtor to the extent of $337,500.00 per Broker Real Estate Listing Recommendation dated 9-1-16. The Debtor proposes to retain SLS's collateral and to treat the contract as a current, non-default loan with a non-default contract rate of 5.25% modified and amortized over a new twenty (20) year term with new monthly contractual payments of $2,274.22. Debtor shall continue to pay regular monthly payments pursuant to the terms of its contract as modified by this Plan, commencing the first of the month following thirty (30) days from the Effective Date. Debtor shall be responsible for maintaining insurance coverage with SLS named as mortgagee/loss payee. Debtor shall make insurance premium payments directly. Property taxes for 2016 and prior years shall be paid pursuant to Class II treatment herein. The unsecured portion of the claim of SLS shall be paid as a Class IX general unsecured claim per terms of this Plan.

(4)     In the event the Debtor fails to make timely mortgage payments; fails to make timely payment to property tax claims per the Plan; fails to pay post-petition property taxes in a timely manner; or fails to maintain adequate insurance on the collateral with SLS named as mortgagee/loss payee, SLS shall provide Debtor with a written Notice of Default under the terms of the Plan providing ten (10) additional days to cure default, failing which, the automatic stay and/or permanent injunction shall be automatically lifted and SLS entitled to proceed with its legal remedies under state law without further Orders of the Bankruptcy Court.

### H.     Class VIII - YADKIN BANK, dba NEWBRIDGE BANK ("NEWBRIDGE").

(1)     Classification. Newbridge, loan no. 10038600001, is fully secured with a first deed of trust on rental property consisting of beach house located at 102 Galleon Court, Emerald Isle, Carteret County, N. C., having a value, in the opinion of Debtor of $1,000,000.00 (tax value of $807,610.00). Newbridge valuation for its proof of claim is $1,410,000.00. The payoff on the first deed of trust is $593,069.22 as of September 21, 2016. The mortgage bears interest at rate of 3.5%.

(2)     Impairment. This class is impaired.

(3)     Treatment. Per valuation of the Debtor and Newbridge, this debt is fully secured with a significant equity cushion. Accordingly, the Debtor will not be making periodic monthly payments on this mortgage. The Debtor proposes to liquidate this property at private sale within nine months of the Effective Date of Debtor's Plan of Reorganization (such nine month period being called the "Sale Period"), with net sales proceeds after payment in full of the first deed of trust to Newbridge, (including interest, costs, fees, expenses and attorneys' fees), costs of sale, closing costs, estimated

11

capital gains and income taxes ("Net Sales Proceeds") then to be remitted to the Trust Account of Richard D. Sparkman, Attorney, for disbursement to other administrative, priority and general unsecured claims pursuant to their state law priority and further Disbursement Orders of the Bankruptcy Court.

If the property has not been sold within the Sale Period, prior to the expiration of the Sale Period, the Debtor shall engage an auctioneer, which auctioneer is satisfactory to Newbridge, and shall cause the auctioneer to auction the property such that the first deed of trust to Newbridge (including interest, osts, fees, expenses and attorneys' fees) is paid and satisfied in full not later than the 90th day after the end of the Sale Period (such 90 day period being called the "Auction Period"). During either the Sale Period or the Auction Period, the Debtor may request changes and/or adjustments be made to listing price of the property and may request other amendments to the listing agreement and/or the auction contract, which changes adjustments and/or amendments shall be made and b e effective only with Newbridge's prior written consent but without the necessity of any further Orders of the Bankruptcy Court.

(4)    Relief from Stay.  In the event (a) the Debtor fails to timely liquidate property per terms of the Plan as set forth above, (b) the Debtor fails to engage an auctioneer prior to the end of the Sale Period, (c) the auctioneer fails to auction the property within the first 30 days of the Auction Period, or (d) the Debtor fails to maintain adequate insurance on the collateral of Newbridge with Newbridge named as mortgagee/lender loss payee, then the automatic stay and/or permanent injunction shall be automatically lifted and Newbridge shall be entitled to proceed with its legal remedies under state law, including, without limitation, foreclosure and sending notices of foreclosure hearing, notice of foreclosure sale and similar notices to the Debtor, without further Orders of the Bankruptcy Court.

I.    **Class IX - General Unsecured Claims**

(1)    Classification:  All holders of allowed, general unsecured claims of whatever nature and description against the Debtor except as otherwise classified in Plan.

(2)    Impairment.  This class is impaired.

(3)    Treatment.  The Debtor estimates the allowed unsecured claims in this Class will total approximately $331,443.39, said sum including estimated deficiency claims in favor of Santander and SLS of approximately $6,652.34 and $252,401.88 respectively.   In accordance with the Liquidation Analysis and Income and Expense Statement attached to Debtor's Disclosure Statement as ***Exhibits A and B,*** the Debtor is required to pay general unsecured creditors 100%.  The Debtor's Plan proposes to pay the general unsecured creditor class in full plus 1.5% interest (current federal rate of interest) from Net Sales Proceeds (as defined in Class VIII, paragraph H(3) above) of beach house at 102 Galleon Court, Emerald Isle, N. C., with balance, if any, to be repaid over 5 years commencing the 10th of the month following 30 days from distribution of net proceeds from sale of beach house with a 30 day grace period.  The Debtor shall have the right to pre-pay the Unsecured

Class without penalty. Future Plan payments to Class IX Unsecured Creditors over the 5 year repayment period shall be made by Adam Raynor, Attorney in Fact, for Wandra A. Raynor as Disbursement Agent.

## IV. MEANS OF EXECUTION

A.     The Debtor will make all payments as called for by the Plan, and shall additionally fund the Plan by liquidating the collateral of Newbridge Bank and paying unsecured creditors the Net Sales Proceeds pursuant to terms of this Plan. As a result of the partial liquidation, significant equity will result such that the general unsecured creditors will be paid in a relatively short period of time. Prior to the sale of the Galleon Court property, the Debtor shall obtain estimated income and capital gains taxes from her Court approved CPA. Such gains tax estimates as determined by the CPA shall be escrowed from sales proceeds in the trust account of Richard D. Sparkman, Attorney. Estimated income and capital gains taxes, resulting from such sale shall be paid from the Sparkman Trust Account when taxes are due the following April. Future Plan payments to Class IX Unsecured Creditors over the 5 year repayment period shall be made by Adam Raynor, Attorney in Fact, for Wandra A. Raynor as Disbursement Agent.

B.     The Debtor shall take such other action as necessary to satisfy the other terms and requirements of this Plan and the Bankruptcy Code.

C.     All funds necessary for the implementation of this Plan shall be obtained from funds (1) in the possession of the Debtor; and (2) generated from future income of the Debtor.

D.     Administrative claims unpaid on the Effective Date will be paid from sale of real property; and/or from future income of the Debtor. Professional fees and expenses will be paid on, the Effective Date and/or from sales proceeds of real property as soon thereafter as they are approved by the Bankruptcy Court. Professional fees and expenses incurred following confirmation will be paid directly by the Debtor and/or from sale of real property, but without necessity of prior Bankruptcy Court approval.

E.     Pursuant to § 1146(a), the issuance, transfer or exchange of notes or equity securities under the Plan, the creation of any mortgage, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any instrument of transfer under, in furtherance of, or in connection with the Plan, including without limitation, deeds, or bills of sale or assignments of personal property executed in connection with any of the transactions contemplated under the Plan will not be subject to any stamp, real estate transfer, mortgage recording, sales, use, or other similar tax. Each of the relevant state or local governmental officials or agents will forego the collection of any such tax or governmental assessment and accept for filing and recordation of any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment consistent with the applicable provisions of the Plan.

## V.  MODIFICATION OF CLAIMS AND CANCELLATION UPON PAYMENT

The claims stated herein, by modification, Court Order, or other legally appropriate manner, might be modified throughout the course of payment under this Plan.  The Debtors upon full payment as called for under the notes and deeds of trust, if any, shall be entitled to have the notes marked paid and satisfied and the deeds of trust cancelled as a matter of record, by the Trustee, or by appropriate application to this Bankruptcy Court, and upon a showing that the full amount of the monthly payments were made by the Debtor.

## VI.   PROVISIONS GOVERNING DISTRIBUTIONS

A.      Delivery of Distributions in General.  Distributions to holders of allowed claims shall be made:  (i) at the addresses set forth in the proofs of claim filed by such holders; (ii) at the addresses set forth in any written notices of address change submitted to the Court or Attorney for the Debtor after the date on which any related proof of claim was filed; or, if the information described in clauses (i) or (ii) is not available, (iii) at the addresses reflected in the Debtor's schedules of liabilities.

B.      Distribution Dates.  It is the intent of this Plan that the distribution shall occur as early as practicable following the Effective Date, unless otherwise stated herein.  There shall be no pre-payment penalty.

## VII.  ASSUMPTION OF UNEXPIRED LEASES
## AND EXECUTORY CONTRACTS

Except as specified hereinbelow, all unexpired leases and executory contracts which exist between the Debtors and any individual or entity, whether such unexpired lease and executory contract be in writing or oral, which have not heretofore been rejected or heretofore been approved by Orders of the Court, are hereby specifically **assumed**; provided, however, that this provision is not intended to assume any agreement for the renewal or the extension of any loan or funds presently binding and in effect between the Debtor and secured creditors set forth herein in contravention of the terms of this Plan.  In the event of conflicting language, the terms of this Plan shall control.

The following unexpired leases and/or executory contracts, if any, are **rejected**: None

## VIII.  CAUSES OF ACTIONS

The Debtor may pursue any causes of action arising under §§ 544, 545, 547, 548, 549, 550, or 553(b) of the Bankruptcy Code, or under any similar provisions of applicable state law to recover any preferences or fraudulent conveyances from any person.  Funds recovered as a result of such actions shall be applied first in reimbursement of attorneys' fees and other costs of such actions.  The balance, if any, shall be paid into the trust account of Richard D. Sparkman, Attorney, for distribution to unsecured creditors with any surplus  becoming property of the Debtor.

**All adversary proceedings to recover preferences and fraudulent conveyances or to otherwise implement the terms of this Plan and all objection to claims, if any, shall be filed within one hundred twenty (120) days of the Effective Date of this Plan.**

Non-core causes of action presently pending in state and/or federal court in which the Debtor is plaintiff may continue to be pursued by Debtor at its sole option.

## IX.  CONFIRMATION AS WAIVER AND RELEASE OF DEBTOR

Confirmation shall constitute waiver and release of the right to pursue litigation and causes of actions against the Debtor, which releases and waivers are supported by the requirements of this Plan and covenants contained herein.

## X.  DEFAULT OF DEBTOR

Should the Debtor default in the terms of this Chapter 11 proceeding prior to substantial consummation, then the Court, upon Motion of any party in interest, shall set the proceeding up for Show Cause Hearing as to why the Debtors should not be converted to a straight bankruptcy proceeding and for such other sanctions as the Court may deem necessary.  For purposes of default, One Hundred Eighty (180) days after the Effective Date shall be deemed to be a reasonable period of time within which to consummate the terms of the Confirmed Plan.  Creditors' remedies upon default after substantial consummation shall be in state court according to the terms of their Notes and Security Instruments as amended or modified by this Plan.

## XI.  ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY AN IMPAIRED CLASS

A.    Each Impaired Class Entitled to Vote Separately.  Each impaired class of claims shall be entitled to have the holders of claims therein vote separately as a class to accept or reject the Plan.

B.    Acceptance by a Class of Creditors.  Consistent with § 1126(c) of the Bankruptcy Code, and except as provided in § 1126(e) of the Bankruptcy Code, a class of claims shall have accepted the Plan if the Plan is accepted by holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the allowed claims of that class that have timely and properly voted to accept or reject the Plan.

C.    Claimants Entitled to Vote.  Holders of impaired claims shall be entitled to vote if:

(1)    Such claim has been filed against the Debtor in a liquidated amount or has been listed on the Debtor's schedules other than as contingent, unliquidated or disputed, and as to which no proof of claim has been filed.  The claim shall be allowed solely for the purpose of voting on the Plan in the amount in which such claim has been filed or listed on the Debtor's schedules;

15

(2)     Such claim has been filed against the Debtor or listed on the Debtor's schedules and is the subject of an existing objection filed by the Debtor, and is temporarily allowed for voting purposes by order of the Court in accordance with Bankruptcy Rule 3018;

(3)     Such claim has been filed in an undetermined amount, in which case the creditor shall not be entitled to vote unless the Debtor and the holder of the claim agree on an amount for voting purposes or the Court enters an order setting the amount of the claim that the creditor may ballot.

(4)     Any entity holding two or more duplicate claims shall be entitled to vote only one claim.

D.     Confirmation Hearing.  The Court will set a hearing on the confirmation of the Plan to determine whether the Plan has been accepted by the requisite number of creditors and whether the other requirements for confirmation of the Plan have been satisfied.

E.     Acceptances Necessary to Confirm the Plan.  At the hearing of confirmation of the Plan, the Court shall determine, among other things, whether the Plan has been accepted by each impaired class.  Under § 1126 of the Bankruptcy Code, an impaired class of creditors is deemed to accept the Plan if at least two-thirds (2/3) in amount and more than one-half (1/2) in number vote to accept the Plan.  Further, unless there is unanimous acceptance of the Plan by an impaired class, the Court must also determine that class members will receive property with a value, as of the Petition Date, that is not less than the amount that such class member would receive or retain if the Debtor was liquidated as of the Petition Date under Chapter 7 of the Bankruptcy Code.

F.     Confirmation of Plan Without Necessary Acceptances.  The Bankruptcy Code provides that the Plan may be confirmed even if it is not accepted by all impaired classes.  In order to be confirmed without the requisite number of acceptances of each impaired class, the Court must find that at least one impaired class has accepted the Plan without regard to the acceptances of insiders, and the Plan does not discriminate unfairly against, and is otherwise fair and equitable, to such impaired class.  In the event that any class votes against the Plan, the Debtor hereby requests and moves the Court under the provisions of this Plan outlined in § IX hereinbelow, for confirmation pursuant to the "cramdown" provisions of § 1129(b) of the Bankruptcy Code.  In connection therewith, the Debtor shall be allowed to modify the proposed treatment of the allowed claims in any class that votes against the Plan consistent with § 1129(b)(2)(A).

## XII.  "CRAMDOWN" FOR IMPAIRED CREDITORS NOT ACCEPTING THE PLAN

In respect to any class of creditors impaired but not accepting the Plan by the requisite majority in number or two-thirds in amount, the proponent of this Plan requests the Court to find that the Plan does not discriminate unfairly and is fair and equitable in respect to each class of claims or interests that are impaired under the Plan and that the Court confirm the Plan without such

acceptances by the said impaired classes.  The Debtor will also request that the Court establish a value for any assets, the value of which is in dispute between the Debtor and any secured creditor, at a valuation hearing under § 506 of the Bankruptcy Code, to be scheduled at the same time as the hearing on confirmation of the Plan.

## XIII.  RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction of these proceedings pursuant to and for the purposes of §§ 105(a) and 1127 of the Code and for, without limitation, the following purposes, inter alia:

1.      to determine any and all objections to the allowance of claims and/or interests;

2.      to determine any and all applications for allowance of compensation for periods prior to or after the Confirmation Date;

3.      to determine any and all applications pending on the Confirmation Date for the rejection and disaffirmance or assumption or assignment of executory contracts and the allowance of any claim resulting therefrom;

4.      to determine all controversies and disputes arising under or in connection with the Plan;

5.      to determine all applications, adversary proceedings and litigated matters pending on the Confirmation Date;

6.      to effectuate payments under, and performance of, the provisions of the Plan, including, but not limited to, future sales of personal and real property retained by the Estate;

7.      to determine such other matters and for such other purposes as may be provided for in the confirmation order;

8.      to determine all disputes regarding property of the estate;

9.      to establish and adjust procedures for the orderly administration of the estate;

10.     to determine matters that are subject to proceedings duly removed to the Bankruptcy Court;

11.     to replace the Debtor-in-Possession with a Trustee for good cause shown; and

12.     to reopen this proceeding for purposes of granting a discharge in accordance with the provisions of 11 U.S.C. § 1141(d)(5).

## XIV.  MISCELLANEOUS PROVISIONS

A.    <u>Survival of Terms</u>.  The covenants, representations and agreements made in this Plan shall survive the Confirmation Date and the transactions contemplated herein.

B.    <u>Successors Bound</u>.  This Plan shall on the Confirmation Date be binding upon and inure to the benefit of the respective heirs, successors and assigns of the Debtors and the holders of claims and interests.

C.    <u>Controlling Law</u>.  This Plan shall be read and construed and take effect in all respects in accordance with the law as set forth in the United States Bankruptcy Code and the Rules promulgated thereunder.

D.    <u>Further Assurance</u>.  If at any time, the Debtors shall consider, or be advised, that any further releases, assurances or documents are reasonably necessary or desirable to carry out the provisions hereof, and the transactions contemplated herein, the holders of claims and the holders of interest shall, upon reasonable request, execute and deliver any and all documents and assurances, and do all things necessary or appropriate to carry out fully the provisions hereof.

Respectfully submitted this the 9th of December, 2016.


   */s/ Richard D. Sparkman*
Richard D. Sparkman
N. C. State Bar No. 6857
Attorney for Debtor
RICHARD D. SPARKMAN & ASSOCIATES, P.A.
Post Office Box 1687
Angier, North Carolina  27501
(919) 639-6181



   */s/ Wandra Adams Raynor*
Wandra Adams Raynor
by Adam Raynor as Attorney-in-Fact

18